IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Clifton Anderson and Richard Stoerkel, | ) | C/A No.: 3:10-cv-2547-JFA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER GRANTING SUMMARY** |
| | ) | **JUDGMENT** |
| City of Camden, Lt. Mike Stone, | ) | |
| Kershaw County, Peggy Spivey, and | ) | |
| Bobbie Bullington, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on two separate motions for summary judgment, one filed by Defendants City of Camden and Lieutenant Mike Stone and the other filed by Defendants Kershaw County, Peggy Spivey, and Bobbie Bullington. Also pending before this Court is a motion by Kershaw, Spivey, and Bullington to strike witnesses. Having reviewed the parties' briefs and having considered the parties' arguments made at a hearing on these motions, this Court grants Defendants' motions for summary judgment, which renders the motion to strike witnesses moot.

**I.      Factual and Procedural History**

This case involves an incident that took place at Plaintiffs' house on April 22, 2010 during which Defendants took Plaintiffs' two dogs pursuant to a pick-up order issued by a Magistrate of Kershaw County. Plaintiffs Clifton Anderson and Richard Stoerkel live together in Camden, South Carolina, and, at the time of the incident, they owned a male German Shepherd, named Odie, and a female German Shepherd, named Heidi. Heidi had a history of attacking other dogs and of being aggressive towards humans, and she had run loose in the past. On April 21, 2010, Heidi attacked a neighbor's dog, and the neighbor called Kershaw County Animal

Control. In response to that attack and an earlier one, Kershaw County Animal Control obtained an order, issued by R. Eugene Hartis, the Chief Magistrate for Kershaw County Summary Court, which stated:

> By virtue of this order, Kershaw County Animal Control has the Court's permission to take possession of 1 male German Shepard [sic] and 1 female German Shepard [sic] located at 313 Greene Street, Camden, South Carolina, belonging to Richard Stoerkel and/or Clifton Anderson. Mr. Stoerkel was issued a Summons and Arrest Report for a viscious [sic] animal on June 4, 2009, after one of the German Shepards [sic] attacked a Yorkshire Terrier. One of the dogs attacked another small dog on April 22, 2010. These dogs are to be held at Walter M. Crowe Animal Shelter until a hearing which is to be held on Monday, April 26, 2010.

The order was executed by Kershaw County Animal Control and the City of Camden Police Department on the evening of April 22, 2010. Defendants Spivey and Bullington went to the residence to serve the order. They knocked on the door and spoke to the Plaintiffs, explaining to Anderson and Stoerkel that they had a court order to pick up the Plaintiffs' dogs. The Plaintiffs refused to give their dogs over to Animal Control, so Lieutenant Stone of the Camden Police Department was called to assist in the execution of the court order. During the time that Stone was called and the time that he arrived, Anderson went into the house, apparently to call his attorney.

Once Stone arrived at the Plaintiffs' home, he instructed another officer, Sergeant Moore, to turn on her body microphone, and from that point on, there is a recording of the events that transpired as the officers attempted to remove the dogs from the Plaintiffs' home. Stone spoke with Stoerkel on the front porch and explained to him that they were there to take the dogs.

Though Stoerkel expressed his wish to go inside his house and talk with his cousin, Stone told him that he could not go in without being accompanied by an officer. Stoerkel eventually agreed to let Stone come into the house, but he expressed that he did not want anyone else coming in. However, Stone explained that for safety reasons he could not enter the house with the Plaintiffs alone, and Stoerkel did not indicate any further objection to the other officers entering. Stoerkel then entered his home. He now claims that Stone pushed his way in at the time with some of the other officers behind him, but Spivey denied that Stone pushed his way in. Also, there is no indication on the recording that Stone or the other officers were violating Plaintiffs' wishes as they entered the home behind him.

Once in the house, Stone introduced himself to Anderson, who left briefly to contact his attorney. After some discussion, Stone again asked that the Plaintiffs turn over the dogs, and Stoerkel agreed that they would. Stoerkel was allowed to walk the dogs before they loaded them up, and he was allowed to take them in his own vehicle to the animal shelter. Anderson rode with Stone to the animal shelter, and once they arrived at the animal shelter, the Plaintiffs were allowed to bring the dogs into the shelter.

Originally the Plaintiffs asserted the following causes of action against the Defendants: Fourth Amendment violation for unlawful search and seizure, 42 U.S.C. § 1983 (against Stone, Kershaw County, Spivey, and Bullington); Fourth Amendment violation, specifically a *Monell* claim, 42 U.S.C. § 1983 (against Camden Police Department and Kershaw County Animal Control); gross negligence and negligence per se (against Camden Police Department and Kershaw County Animal Control); negligent supervision (against Camden Police Department and Kershaw County Animal Control); negligent training (against Camden Police Department and Kershaw County Animal Control); trespassing (against all Defendants); assault (against all Defendants); battery (against Stone and Camden Police Department); false imprisonment

3

(against all Defendants); and conversion (against all Defendants). Since their initial complaint, Plaintiffs have consented to the dismissal of the *Monell* claims against both Camden Police and Kershaw County. Additionally, the Plaintiffs have consented to the dismissal of the negligent supervision, negligent training, and conversion causes of action against City of Camden and Stone. As such, the remaining causes of action are the Fourth Amendment claims against Stone, Spivey, and Bullington and the state law claims.

## II.    Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III.   Analysis

### A.    Motions for Summary Judgment

#### 1.    Fourth Amendment Cause of Action

Because Plaintiffs have consented to the dismissal of the *Monell* claims against both the Camden Police Department and Kershaw County Animal Control, the only remaining Fourth

4

Amendment cause of action is against the individual Defendants named in this suit—Stone, Spivey, and Bullington. In their motions for summary judgment, Defendants argue that the officers did not violate the Fourth Amendment by going to Plaintiffs' house and seizing their dogs pursuant to a pick-up order issued by a Magistrate. Defendants also argue that the officers are entitled to qualified immunity from all liability with respect to Plaintiffs' Fourth Amendment cause of action. In response, Plaintiffs assert that there was a clear constitutional violation and that the Defendants should not be entitled to qualified immunity because they were obviously violating the Fourth Amendment through their actions. This Court finds that the Defendants are entitled to qualified immunity because there was not a clearly established constitutional violation in this situation.

Qualified immunity serves to "provide[] ample protection to all [public officials] but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In *Harlow v. Fitzgerald*, the Supreme Court of the United States set forth objective standards for a qualified immunity defense, holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818 (1982). The Fourth Circuit Court of Appeals has held that an official's entitlement to qualified immunity is based on an "objective reasonableness" standard, explaining that "the very idea of reasonableness requires that courts accord interpretive latitude to official judgments." *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991). In assessing whether an official is entitled to qualified immunity, courts go through a two-pronged analysis—under the first prong, courts determine "whether a constitutional right would have been violated on the facts alleged," and under the second prong, courts decide whether that constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200

(2001). Since its decision in *Saucier*, the Supreme Court has held that the two-step procedure need not be followed rigidly, noting that "[b]ecause the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). For the case at hand, this Court employs only the second prong of the *Saucier* procedure because "it is plain that [the] constitutional right" proposed by the Plaintiffs "is not clearly established." *Pearson*, 555 U.S. at 237. This Court "thus decline[s] to invest a 'substantial expenditure of scarce judicial resources' by engaging in the 'essentially academic exercise' of determining whether the right exists at all." *Walker v. Prince George's County*, 575 F.3d 426, 429 (4th Cir. 2009) (quoting *Pearson*, 555 U.S. at 811, 818).

Plaintiffs argue that the pick-up order directing the Defendants to seize the Plaintiffs' German Shepherds should have been supported by an oath or affirmation in accordance with the Fourth Amendment. The Fourth Amendment of the Constitution protects

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Circuit has held that "privately owned dogs [are] 'effects' subject to the protections of the Fourth Amendment" and has identified appreciable possessory interests held by owners in their dogs. *Altman v. City of High Point*, 330 F.3d 194, 203 (2003). However, the Fourth Circuit has also found "that dog owners forfeit many of these possessory interests when they allow their dogs to run at large, unleashed, uncontrolled, and unsupervised, for at that point the dog ceases to

6

become simply a personal effect and takes on the nature of a public nuisance." *Id.* at 206. In the *Altman* case, the Fourth Circuit concluded that officers did not commit an unreasonable seizure in violation of the Fourth Amendment when they shot dogs that were roaming the streets, attacking people, and exhibiting aggressive behavior. *Id.* at 206–07. The facts of this case are somewhat different from those in *Altman* because the dogs were caged at the Plaintiffs' home when the officers came to seize them, but similar to the *Altman* case, at least one of the dogs, Heidi, had been roaming the neighborhood and had attacked humans and other dogs on multiple occasions. Also different, the officers in this case had a pick-up order issued by a neutral magistrate ordering them to seize the dogs. However, this Court need not engage in the detailed exercise of determining whether a constitutional right existed under the facts as alleged by the parties because there was not a clearly established constitutional right in this case.

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that law." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). As Plaintiffs' pointed out in their memorandum,

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law that unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is

7

appropriate." *Saucier*, 533 U.S. at 202.  Here, the Court finds that the law was not clearly established and that at most the Plaintiffs have alleged a reasonable mistake by the Defendants or a bad guess in a gray area.  There has been no bright line crossed in this case.

Though in the past few years the law regarding the seizure of vicious animals has begun to be defined more precisely, there are still many gray areas for search and seizure law involving these pets.  Much of the gray area concerns the balance between possessory rights of pet owners and safety concerns for community members.  As indicated above, the Fourth Circuit has held that pets are effects and therefore subject to Fourth Amendment protections; however, the Fourth Circuit has also held that it is reasonable for officers to shoot dogs that are roaming and either attacking or displaying aggressive behavior towards people.  *Altman v. City of High Point*, 330 F.3d 194, 203, 206–07 (2003).  In the same case, the court indicated in dicta that it might not be appropriate to destroy a vicious dog that was not running at large but was in a place where its owner could exercise control.  *Id.* at 207 ("[T]he public interest in control of the dog is correspondingly lessened when a private owner is available to assert control.").  In another case, the Fourth Circuit held that an animal control officer was entitled to qualified immunity for seizing a wolf that was kept as a pet with nothing more than a phone call to her supervisor authorizing her actions.  *Walker v. Prince George's County*, 575 F.3d 426, 430 (2009).  In *Walker*, state law appeared to allow the animal control officer to seize the wolf.  Id. at 430 (citing Md. Code Ann. § 10-621(d)(1)(i-ii) (2008)) ("An animal must immediately be seized when 'there is probable cause to believe that the possession of the animal is in violation of [law] or the animal poses a risk to the public health or the public safety.'").

Both South Carolina law and City of Camden ordinances appear to give the Defendants authority to seize vicious animals.  For example, under South Carolina law "[i]f a law enforcement agent [or] animal control officer . . . has probable cause to believe that a dangerous

8

animal is being harbored or housed in violation of Section 47-3-730, the agent or officer may seize and impound the dangerous animal while the trial is pending."[1]  S.C. Code Ann. § 47-3-750.  According to the language of that statute, a warrant is not required for officers to seize a dangerous animal in order to protect the public.  Furthermore, § 90.21 of the City of Camden ordinances defines a dangerous animal as one "[w]hich the owner knows, or reasonably should know, has a propensity, tendency or disposition to attack unprovoked, cause injury or otherwise endanger the safety of human beings or domestic animals," and § 90.90 provides that "[a]nimals in violation of this chapter may be taken up by the Animal Control or Law Enforcement Officers and transported to the animal shelter . . . ."  Of course, Plaintiffs are correct in their assertion that "city and county codes do not abrogate our constitutional rights . . . ." (ECF No. 58).  However, these laws that allow the seizure of dangerous animals coupled with the murky case law on the seizure of dangerous animals indicate that a constitutional right was not clearly established in this case.

This case presents an issue distinct from all of those addressed by the Fourth Circuit to date—here, the animals were not roaming at large but had escaped on multiple occasions and had attacked at least one human and multiple animals.  Also, the officers in this case were directed to seize the dogs based on a pick-up order issued by a neutral magistrate.  Of course, the exact conduct of the instant action has not been declared either lawful or unlawful,[2] but even in view of the pre-existing law in this area, it is unclear whether the officers were required to have an order supported by an oath or affirmation to seize the dogs.  Though the officers may not have chosen

---

[1] South Carolina Code Annotated § 47-3-730 provides that "[n]o person owning or harboring or having the care of a dangerous animal may permit the animal to go beyond his premises unless the animal is safely restrained and the requirements of Section 47-3-760(E) are met."

[2] Interestingly, a similar pick-up order issued by Magistrate Hartis that resulted in a seizure of neglected animals was appealed, and the conviction of the animals' owner was confirmed by Judge G. Thomas Cooper only four months before the incident of the present case.  (ECF No. 38-13).  While Judge Cooper's trial order does not directly address the validity of the pick-up order, Defendants' contend that it does evidence that the officers were operating under the imprimatur or the judiciary and that they could reasonably rely on the validity of the Magistrate's order.  (ECF No. 56).

the best possible response in this case, they did not violate a clearly established constitutional law. As such, the officers in this case are entitled to qualified immunity from Plaintiffs' Fourth Amendment claim, and Defendants are hereby granted summary judgment for the cause of action based on the Fourth Amendment.

### 2.     State Law Causes of Action

In addition to their claim under the Fourth Amendment, Plaintiffs have made various state law claims against the Defendants. To reiterate, these claims include the following: gross negligence and negligence per se (against Camden Police Department and Kershaw County Animal Control); negligent supervision (against Kershaw County Animal Control); negligent training (against Kershaw County Animal Control); trespassing (against all Defendants); assault (against all Defendants); battery (against Stone and Camden Police Department); false imprisonment (against all Defendants); and conversion (against Kershaw County Animal Control, Spivey, and Bullington). Defendants have moved for summary judgment on all of the state law claims, and this Court finds that Defendants' motions for summary judgment with respect to the state law claims should be granted.

Rather than parse through the individual state law claims that Plaintiffs have asserted and Defendants' arguments against these claims, this Court finds that Defendants are entitled to immunity from all of the state law claims under the South Carolina Tort Claims Act. The immunity section of the South Carolina Tort Claims Act can be found at S.C. Code Ann. § 15-78-60, and Defendants claim that they are immune to Plaintiffs' state law claims pursuant to subsections (1), (2), (3), (4), (5), (6), and (9) of § 60. (2005). Under § 15-78-60(1), government officers are not liable for losses resulting from "legislative, judicial, or quasi-judicial action or inaction." S.C. Code Ann. The Supreme Court of South Carolina has indicated that "[i]f the individual is acting pursuant to a direct court order, courts are more likely to grant quasi-judicial

10

immunity for that action." *Faile v. S.C. Dep't of Juvenile Justice*, 350 S.C. 315, 326, 566 S.E.2d 536, 541 (2002).  In the present case, all of the officers were acting pursuant to a pick-up order issued by Judge Hartis, directing them to seize Plaintiffs' dogs.  As such, this subsection is applicable to Defendants, and they are entitled to immunity under the Act.  In response to Defendants' assertion of immunity under § 15-78-60(1), Plaintiffs state that "Defendants should not receive immunity . . . because they did not follow the magistrate court's order and instead they violated Plaintiffs rights in every inconceivable manner."  (ECF No. 43-1).  This Court finds Plaintiffs' argument against immunity unpersuasive and disagrees with the contention that the Defendants did not follow the pick-up order.  Defendants did seize the dogs as directed by the court's order.  Moreover, based on the recording of the seizure and the discussions leading up to it, Defendants approached the situation with considerable diplomacy—Plaintiff Anderson even admitted that he appreciated the way that Stone was handling the difficult situation.  (ECF No. 44, Exh. 2 at 8:55 ("I appreciate your approach")).  As such, this Court finds that Defendants are entitled to immunity from the state law causes of action in accordance with the South Carolina Tort Claims Act.

Other subsections of the South Carolina Tort Claims Act may also be applicable to the present case, and Defendants may be eligible for immunity under those subsections, as well.  For example, § 15-78-60(5) grants immunity when the officer has exercised discretion or judgment in performing or failing to perform any act which is in the officer's discretion.  S.C. Code Ann. Certainly, the officers exercised their discretion in how they went about seizing the dogs, and as the Court has previously noted, the officers showed considerable finesse in their handling of the situation with Plaintiffs.  Another subsection grants immunity to an officer for "entry upon any property where the entry is expressly or impliedly authorized by law," which could be applicable to at least the trespass claim by Plaintiffs.  S.C. Code Ann. § 15-78-60(9).  While this Court finds

11

that Defendants are entitled to immunity pursuant to § 15-78-60(1) for all of the state law claims against them, Defendants may be eligible for immunity under other sections of the South Carolina Tort Claims Act, as well.

### B. Motion to Strike Witnesses

Because the Court is granting summary judgment to Defendants on both the Fourth Amendment and the state law claims, the Motion to Strike Witnesses submitted by Defendants Kershaw County, Spivey, and Bullington is moot.

### IV. Conclusion

Based on the reasoning set forth above, this Court hereby grants summary judgment to Defendants on all of the causes of action currently asserted against them. Additionally, the Court finds that the pending motion to strike witnesses is moot. This case is, therefore, dismissed.

IT IS SO ORDERED.

October 5, 2011                                         Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge

12